### Kellogg and Baker *vs.* Slawson and others.

Where it appears, either by recitals in an assignment executed for the benefit of creditors, or aliunde, that the assignor supposed himself solvent, and made the assignment to prevent a sacrifice of his property, it will be held fraudulent; the intent to hinder and delay creditors being apparent.

But where an assignment recited that the assignor was indebted in sundry considerable sums of money, and had become unable to pay and discharge the same with punctuality, or in full, and that he was desirous of making a fair and equitable distribution of his property and effects, among his cred-itors; *Held*, that the recital was not inconsistent with insolvency, but that on the contrary it clearly evinced that the assignor supposed his property to be insufficient for the payment of his debts; and that the conveyance was therefore executed upon a good consideration.

An inventory, or schedule, of the property assigned, is not indispensable, as a condition precedent to the taking effect of the deed; and the omission of it is not of itself sufficient to avoid an assignment; although it may be evidence of fraud.

The question of fraudulent intent, in such a case, is a proper question for the jury, in connection with the other circumstances.

A provision in an assignment, authorizing the assignees to take possession of the assigned property, " and sell and dispose of the same, upon such terms and conditions as in their judgment may appear best, and most for the interest of the parties concerned, and convert the same into money," does not authorize a sale upon credit, and will not therefore render the assignment void, as hindering or delaying creditors.

THIS action was for taking and converting certain personal property. The plaintiffs claimed under an assignment executed by one James W. Backus for the benefit of creditors, giving preferences; and the defendants, as judgment creditors of Backus, caused the property to be taken and sold upon an execution against Backus. Upon the trial the plaintiff obtained a verdict, and from the judgment entered thereon the defendants appealed. The questions arose upon the terms of the assignment, and are set forth in the opinion of the court.

*J. Mullen*, for the plaintiffs.

*J. Clarke*, for the defendants.

Kellogg *v.* Slawson.

*By the Court*, W. F. ALLEN, J.   The only questions presented by the bill of exceptions grow out of the terms of the assignment; the defendants insisting that upon its face it is void.   The first point relates to the occasion, cause or consideration of its execution, as stated in the recital.   The recital is as follows:  "Whereas James W. Backus is justly indebted, in sundry considerable sums of money, and has become unable to pay and discharge the same with punctuality or in full, and the said party of the first part is desirous of making a fair and equitable distribution of his property and effects among his creditors."   The defendants insist that it is only insolvency that will justify an assignment for the benefit of creditors; that the insolvency must appear either by·recital or by proof.   The counsel conceded that if the fact of insolvency was recited it would be prima facie sufficient to support the assignment ; and by this concession I think he yielded the entire ground.   For there is no proposition better settled than that recitals in deeds are not evidence against strangers or third parties, and are only evidence between parties and privies.   So that whether the fact be recited is entirely immaterial.

*Barney,* v. *Griffin* (2 *Comst.* 365,) cited by the counsel for the defendant, was the case of an assignment for the benefit of a portion only of the creditors, showing a surplus after payment of the debts provided for, and providing for a payment of that surplus to the assignor ; and it was held fraudulent.   The court held that the parties having provided for a surplus were estopped from alleging that there was no surplus.   The same principle was decided in *Goodrich* v. *Downs*, (6 *Hill*, 438,) but the principle of these cases is not applicable to this.   Had it appeared in this case, either by recitals in the assignment or aliunde, that the assignor supposed himself solvent, and made the assignment·to prevent a sacrifice of his property, it would have been fraudulent.   The intent to hinder and delay creditors would have been apparent.   (*Van Nest* v. *Yoe*, 1 *Sandf. Ch. Rep.* 4.)   The recital is not inconsistent with insolvency, but on the contrary it avers. the inability of the assignor to pay his debts in full, and expresses a desire to distribute his property

equitably and fairly among his creditors; clearly evincing that he supposed that his property was insufficient for the payment of his debts. The conveyance was upon a good consideration, and fraud will not be presumed, in the absence of evidence. (*Dey* v. *Dunham*, 2 *John. Ch. Rep.* 189.)

The next objection to the assignment is that it is general of "all and singular the goods and chattels, merchandise, bills, bonds, notes, book accounts, claims and demands, choses in action, books of accounts, judgments, evidences of debt and property of every name and nature whatever," and that no inventory accompanied the assignment or was made, at the time, or provided by the assignment to be made. The ground taken is that the assignment is void for uncertainty, in that it gives no description or inventory of the property, or any means or clue whatever by which creditors can ascertain what it was, or what their rights and interests were. As between assignor and assignee the description is sufficient to pass the title to and vest it in the assignee; and although the objection is for the want of certainty, the reason assigned in the objection, and the entire argument, pointed to the fact as an evidence of fraudulent intent, as showing a design to protect the property that might chance to be discovered by a vigilant creditor, and yet retain the power, in the debtor, to conceal it, if he could, and appropriate it to his own purposes. The grantor in a conveyance as special as this could not object that nothing passed, because of the generality of the terms employed. And if he could not, the objection could not be taken by third persons. As a badge of fraud, it is not necessarily to be regarded as showing a fraudulent intent, and is in no case conclusive. The exception in this case is to the refusal of the judge to hold the assignment void in law for this reason. In *Van Nest* v. *Yoe*, cited above, Assistant Vice Chancellor Sandford, speaking of a similar objection, taken in that case, says: "This is not of itself a strong badge of fraud, but frequently becomes one, in connection with other circumstances." *Sterns* v. *Bull*, (6 *Mass. Rep.* 339,) was an assignment to certain creditors and sureties of the assignor to indemnify them, the surplus to be accounted for to the assignor, and the

Kellogg *v.* Slawson.

assignment was held valid. The court say that the fact that schedules of the effects conveyed, or of the amount of the debts, or of the liabilities to be indemnified against, are not made at the time of the grant, furnishes, prima facie, a presumption of fraud. Within this decision and the provisions of the revised statutes, (2 *R. S.* 137, § 4,) making the question of fraudulent intent, in cases like this, a question of fact, the most that the defendants could have asked would have been a submission of the question to the jury, under proper instructions. In *Jackson* v. *DeLancy,* (13 *John.* 557,) it was held that nothing would pass under a general clause in a sheriff's deed. The sheriff acts under a statutory power, and the reasons are obvious why a sale and conveyance of the property of a debtor, under such general description, would not be a good execution of the power; but it does not follow that a deed *inter partes,* equally general in its terms, would not be good. *Rollin* v. *Pickett,* (2 *Hill,* 552,) was an agreement to sell seventy acres of land, without stating what seventy acres, or where located, and of course was void for uncertainty, and entirely different from this case. This assignment is not subject to the objections taken against the conveyances referred to. (*See Jackson* v. *Parkhurst,* 4 *Wend.* 369.) The want of an inventory or schedule may be evidence of fraud, but its existence is by no means indispensable, as a condition precedent to the taking effect of the deed. (*Keyes* v. *Brush,* 2 *Paige,* 311. *Cunningham* v. *Freeborn,* 1 *Edwards,* 256. *S. C.,* 3 *Paige,* 557.) The chancellor, at page 561, says, "It has never been held that such an omission was of itself sufficient to avoid an assignment." (*See also Hatch* v. *Smith,* 5 *Mass. Rep.* 42; *Emerson* v. *Knower,* 8 *Pick.* 63; *Bayard* v. *Hoffman,* 4 *John. Ch. Rep.* 450.) It cannot be said that the assignment was absolutely void for the want of an inventory; and as the exception was to the refusal of the judge to hold, as matter of law, that such omission rendered it void, it was not well taken. It was a proper question for the jury, in connection with the other circumstances of the case.

The remaining objection is founded upon the power granted to the assignees to take possession of the assigned property

" and sell and dispose of the same, upon such terms and conditions as in their judgment may appear best and most for the interest of the parties concerned, and convert the same into money." The only question upon this branch of the case is, whether under this clause the assignees are authorized to sell upon credit. In *Rogers* v. *DeForest,* (7 *Paige,* 277,) the chancellor held that an express power to assignees for the benefit of creditors, to sell upon credit, did not tend to delay or hinder the creditors of the assignor in the collection of their debts, and that the trust was not, for that reason, void. His reasons were that if the assignees did their duty they would not sell upon credit, without obtaining the difference in value between a sale for cash and a sale upon credit; and that the creditors would have the right to insist that such securities should be immediately converted into money and applied to the purposes of the trust. But it would seem from the remarks of the chancellor in *Meacham* v. *Sternes,* (9 *Paige,* 398,) that he afterwards came to a different conclusion. In the latter case, the trustee, under a power to sell in such manner and at such reasonable times as should seem proper to him, had sold the assigned property upon a credit; and of this the chancellor says : " It was moreover a breach of his duty as a faithful assignee for the benefit of creditors to retail the property in this way, upon credit. For the creditors were entitled to have the assigned property converted into money and applied to the payment of their debts, without unnecessary delay. And the assignment itself would have been clearly fraudulent if the assignors had in terms directed their assignees to dispose of the property in the manner in which it was disposed of by the trustees in this case." In *Barney* v. *Griffin,* (2 *Comst.* 365,) the assignment in terms authorized a sale upon credit, and this, by Bronson, J. was held to be an ununanswerable objection to the deed. Such power does tend directly to hinder and delay creditors, and necessarily invalidates the trust. (*And see Gore* v. *Clisby,* 8 *Pick.* 559.) If therefore, by the terms of this assignment, the plaintiffs, the trustees, are authorized to sell upon a credit, the objection of the defendants was well taken, and the ruling of the judge upon the

Kellogg *v.* Slawson.

trial, wrong. The same rules must apply to the construction of this instrument as to any other deed. And one leading maxim in the construction of all written intruments is that a liberal construction shall be put upon them, so as to uphold them, if possible, and carry into effect the intention of the parties. (*Co. Litt.* 36, *a.*) Another maxim is, *quad leges constructio non facit injuriam ;* that every deed shall receive such construction as will sustain rather than destroy it. (*Co. Litt.* 183, *a, b.*) These principles have been applied in the construction of deeds creating trusts for the benefit of creditors. In *Hitchcock* v. *Cadmus,* (2 *Barb. S. C. Rep.* 381,) authority was given to the assignees to "manage and improve" the assigned property, and it was held that although the language was broad enough to authorize the erection of buildings and making alterations and repairs upon the real estate, which would hinder and delay creditors and avoid the deed; and that the words should not, in the absence of any thing else in the instrument, favoring such a construction, have so broad an effect, but should, to uphold it, be satisfied by construing the assignment as authorizing the trustee to control and administer the assigned property, to meliorate the same by careful and prudent management, and sell it at such time as would be most beneficial to creditors. Vice Chancellor Sandford, in *Van Nest* v. *Yoe,* says, "We are not to imply a power from the instrument, in order to overturn it, but we are to construe it, if practicable, so as to give effect to every part of it."

It cannot be held, without doing violence to these rules, that the assignment in this cause authorizes a sale upon credit. The words employed can be fully satisfied far short of conferring this power. They must mean "such terms and conditions" as are consistent with the rights of creditors, and the duties of the assignees and the rules of law, as well as those that should appear for the best interest of the parties concerned; the direction being to convert the property into money, and not into debts against third persons. It would be sufficient for me to say, here, that the same question was before us in *Pratt* v. *Corbin,* decided in January last. We there held that a power in precisely

the same terms did not authorize a sale upon credit, and did not therefore hinder or delay creditors. The same was substantially decided in *Meacham* v. *Sternes.* The same clause was contained in the assignment in *Hitchcock* v. *Cadmus,* and although it is not particularly referred to, the justice who decided the case held that it directed a sale of the assigned property without delay, and that it was a valid assignment. In Massachusetts it has been held that authority to an assignee to sell the assigned property at public or private sale, in such manner and at such times as the trustees might consider expedient, was an authority to sell upon credit. (*Neally* v. *Ambrose,* 21 *Pick.* 185.) This was in an action against assignees, to charge them with the property sold upon credit, and the court held that the assignees had not transcended their authority, and were not liable to the action. This is in direct conflict with *Meacham* v. *Sternes,* which is binding as an authority with us, and in our judgment is well sustained by principle.

There is no complaint that the cause was not properly submitted to the jury, with proper instructions. The judgment must be affirmed.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 4, 1852. *W. F. Allen, Hubbard* and *Pratt,* Justices.]