[Sac. No. 4893. In Bank.—September 3, 1935.]

G. R. HOLCOMB ESTATE COMPANY (a Corporation), Appellant, v. LUCY A. BURKE et al., Respondents.

Thatcher & Woodburn, Forman & Forman and J. H. Mc-Mahon for Appellant.

Hawkins, Mayotte & Hawkins and C. M. Hawkins for Respondents.

CURTIS, J.—This action involves six separate parcels of real property. One of said parcels, which will be referred to as parcel one, was owned by Grove R. Holcomb at the time of his death. The other five parcels were acquired by certain of his heirs, predecessors of the defendants herein, subsequent to his death at the times and in the manner hereinafter more fully set out. Plaintiff seeks to quiet its title to all of said six parcels, and in addition thereto, in case its title cannot be quieted to the five parcels acquired since the death of said Grove R. Holcomb, plaintiff asks to have it adjudged that the defendants hold said five parcels of land in trust for the plaintiff. Said parcels of land are all situated in the county of Sierra in this state. While plaintiff has filed a complaint, an amended complaint, and an amendment to its amended complaint, we will refer to plaintiff's pleadings upon which this action was tried as the complaint. Plaintiff's complaint contains five separate causes of action. The first cause of action is one to quiet title to all of the six parcels of land involved herein, and in the other four causes of action plaintiff seeks to have imposed a trust upon the five parcels of land which were acquired by defendants' predecessors after the death of said Grove R. Holcomb.

During his lifetime Grove R. Holcomb was extensively engaged in general ranching and stockraising in the state of Nevada, and at the time of his death was possessed of a large amount of real property, consisting of many separate and distinct parcels of land, stock, equipment and other personal property used by him in carrying on said business during his lifetime. These lands were situated in the state of Nevada with the exception of one parcel thereof, which was situated in the county of Sierra, which is the same parcel of land here-

inbefore referred to and described in the first cause of action as parcel one. Prior to his death, the said Grove R. Holcomb requested that his Nevada lands and properties be held together and not divided as they would be more valuable together than separated. On his death in December, 1905, he left surviving him, his widow, Sarah A. Holcomb, and nine children, as his heirs at law. In the following month of June, his widow and children caused the plaintiff corporation to be organized, and on September 18, 1906, they conveyed to said corporation by specific description the numerous tracts of land acquired by them as heirs of Grove R. Holcomb, deceased, situated in the state of Nevada, except the homestead, which had been previously set aside to the widow of the deceased; also all water rights owned by said deceased at the time of his death, and all cattle, horses and other stock, all machinery and all other personal property belonging to the estate of Grove R. Holcomb, deceased; and "also all the right, title and interest which the parties of the first part now have, or which they may hereafter acquire, as heirs at law of Grove R. Holcomb, deceased, in any and all other real property of the estate of the said Grove R. Holcomb, deceased, including all property which may hereafter be found belonging to said estate, wherever the same may be situated". It will be observed that the deed makes no specific reference to the property of said estate situated in the county of Sierra in this state. The deed was on October 2, 1906, recorded in the office of the county recorder of the county in the state of Nevada in which the real property specifically described therein was situated, but it was never recorded in California. In January, 1908, all of the children of said Grove R. Holcomb, deceased, conveyed to their mother, Sarah A. Holcomb, the real property referred to as parcel one situated in Sierra County and owned by said Grove R. Holcomb at the time of his death, and in response to a request contained in the petition for distribution, the Superior Court of the County of Sierra on November 18, 1908, distributed said real property to said Sarah A. Holcomb. The deed from the children to their mother was duly recorded on August 7, 1908, in the office of the county recorder of Sierra County. Upon the heirs of Grove R. Holcomb, deceased, conveying to the corporation the real and personal property described in said deed of September 18, 1906, the capital stock thereof was issued to Mrs. Holcomb and her

children. They conducted the corporation thereafter as a family affair. Members of the family were the sole owners of its capital stock and served as its directors and officers. No salaries or wages were paid to the officers or directors, nor was any dividend paid to the stockholders. On the other hand, there were paid from the funds of the corporation the living expenses of all members of the family with the possible exception of Mrs. Burke. In this manner not only the general living expenses of the several members of the family were paid by checks drawn on the corporate funds, but there were also paid in the same manner, doctors' bills, premiums on life insurance policies, furniture, cemetery lots, and even lands and homes for the different families represented in the corporation. The affairs of the corporation were thus carried on without any objection or hindrance by any member of the family or by anybody else until September, 1929. In the meantime the corporation became involved in financial difficulties. At the time of its incorporation it became indebted to the Washoe County Bank of Reno, Nevada, in the sum of $20,000 borrowed money, and in September, 1929, its indebtedness to the bank was something over $400,000. On September 12, 1929, about 87 per cent of the stock of said corporation was transferred to Messrs. Thatcher, Wiegand and Turrittin, as trustees representing a corporation known as the Realization Corporation, a successor in interest to the then defunct Washoe County Bank. A change in the officers and directors of the corporation immediately took place, and its management passed from the control of the Holcomb family to the new interests represented by Messrs. Thatcher, Wiegand and Turrittin. Shortly thereafter the institution of this action followed. The defendants in this action, with the exception of T. C. Kiely, administrator of the estate of Sarah A. Holcomb, deceased, are the heirs at law, or their successors in interest of Grove R. Holcomb, deceased. Sarah A. Holcomb died intestate on August 31, 1921, and her estate was subsequently distributed to her heirs at law.

Regarding the five parcels of land involved herein, and which were acquired by certain of the heirs of Grove R. Holcomb, deceased, since his death, four of said parcels were conveyed to Sarah A. Holcomb by third persons prior to her death. One of such conveyances was made in the year 1909, one in the year 1917, and the two others in the year 1919.

These parcels of land were after the death of Sarah A. Holcomb distributed to her heirs at law at the time the real property referred to as parcel one was distributed to said heirs. The fifth parcel of real property was conveyed by a third person to W. T. Holcomb in 1911. Since then W. T. Holcomb has died and certain of the defendants herein have succeeded to his interest in said parcel.

The theory upon which the plaintiff prosecutes this action is as to parcel one that the plaintiff corporation acquired the title to said parcel through the deed executed in the corporation's favor by the heirs of Grove R. Holcomb, deceased, which bears date the 18th of September, 1906, and is hereinbefore referred to. This deed, as we have seen, while not specifically describing the Sierra County property, contained a general provision, hereinbefore quoted in full, whereby the grantors therein purported to convey all real property of the estate of Grove R. Holcomb, deceased, "wherever the same may be situated". As to the remaining parcels of real property concerning which the plaintiff seeks a decree either that its title be quieted or that they are held in trust for the plaintiff, the contention of the plaintiff is that they were purchased entirely by funds of the plaintiff corporation and the title thereto taken as to four parcels in the name of Sarah A. Holcomb and one thereof in the name of W. T. Holcomb upon the express understanding that the grantee in each deed would hold the lands conveyed thereby in trust for the plaintiff. The answer of the defendants consists of denials of the material allegations of the complaint, and also contains affirmative defenses, which will be referred to later when reference to any of them is necessary in order to present the questions under discussion. Upon the trial the court found in favor of the defendants upon practically all controverted issues, and rendered judgment in accordance with such findings from which the plaintiff has appealed.

We will first discuss the judgment in so far as it relates to the cause of action to quiet title to parcel one, the real property owned by the deceased, Grove R. Holcomb, at the time of his death and situated in the county of Sierra. As to this parcel of real property, the plaintiff corporation contends that by the deed of the heirs of Grove R. Holcomb, deceased, to the G. R. Holcomb Estate Company of date September 18, 1906, and hereinbefore referred to, the said heirs of Grove

R. Holcomb conveyed this parcel of land to the corporation, although it was not specifically described in said deed. Reliance is placed by plaintiff upon the omnibus paragraph in said deed hereinbefore set out in full which purported to include in said conveyance all property belonging to the estate of Grove R. Holcomb, deceased, "wherever the same may be situated", and the position of the plaintiff corporation is that as the heirs of said deceased had conveyed the Sierra County land belonging to said deceased to the corporation, the subsequent deed from the children of said Grove R. Holcomb to their mother of this same land was of no legal effect whatever. As a special defense to the cause of action to quiet title to this specific parcel of land, the defendants, after quoting said omnibus paragraph in said deed of September 18, 1906, allege, "That it was not the intention or purpose of either said grantors or said grantee, that such deed would or should affect in any manner, property located otherwise or elsewhere than in said Washoe County, Nevada." Upon the issue made by this special defense, the court after referring to the deed of Mrs. Holcomb and her children to the plaintiff corporation, dated September 18, 1906, found, "That it was the intention, understanding and purpose of said heirs at law and next of kin, being the grantors in said deed, and of plaintiff corporation, being the grantee therein, that the only lands and property conveyed by said deed were those situated in said Washoe County, Nevada; that at said time it was not the purpose or intention of either said grantors or said grantee, that said deed would or should apply to or affect, in any manner, property located otherwise or elsewhere than in said Washoe County, Nevada." That there is ample evidence in the record to support this finding cannot be questioned. This deed was never recorded except in Washoe County, Nevada. After the present officers of the corporation gained control in 1929, a certified copy of said deed was recorded in Sierra County. Slightly over a year after the execution of the said deed to the corporation, the children of Grove R. Holcomb conveyed their interest in the Sierra County lands to their mother, and subsequently the property was distributed by the superior court of that county to Mrs. Holcomb. It will thus be seen that the grantors in said deed, who owned all the stock of the grantee therein, pursued a course regarding said Sierra County land utterly inconsistent with their deed of Septem-

ber 18, 1906, if said deed be construed to include the Sierra County land. There is also evidence that the same attorneys who prepared the deed of September 18, 1906, also prepared the later deed. The same attorneys participated in the settlement of the estate of Grove R. Holcomb, deceased, in Washoe County, who subsequently settled the estate of said deceased in Sierra County. Furthermore, all descendants of Grove R. Holcomb, deceased, who were living at the time of the trial of the action, testified that it never was the intention of the heirs of said deceased to convey the Sierra County property to the corporation. ▮ Plaintiff does not seriously question the sufficiency of the evidence to support said finding but contends that the general or omnibus clause in the deed of September 18, 1906, is a valid disposition of all property belonging to the estate of Grove R. Holcomb, deceased, wheresoever situated, and that the trial court erred in admitting oral evidence to vary the plain and unambiguous terms of said instrument. It may be conceded that, generally speaking, a general description in a deed is sufficient to pass title to all lands belonging to the grantors. To a certain extent, this was the holding in the following well-considered cases: *Frey* v. *Clifford*, 44 Cal. 335; *Pettigrew* v. *Dobbelaar*, 63 Cal. 396; *McCulloh* v. *Price*, 14 Mont. 320 [36 Pac. 194, 43 Am. St. Rep. 637]; *Mays* v. *Morrell*, 65 Or. 558 [132 Pac. 714]; *Chicago Great Western R. R. Co.* v. *McCaffrey*, 178 Iowa, 1147 [160 N. W. 818]; *Brown* v. *Warren*, 16 Nev. 228. While agreeing with plaintiff as to the effect of a general description in a deed, we are not in accord with its contention that the deed in question was so plain and unambiguous that the court committed reversible error in admitting extrinsic evidence to explain its terms. In the first part of the deed, it is recited that the grantors grant to the grantee all those certain pieces and parcels of land, "situated in the County of Washoe, State of Nevada, and described as follows:" Here follows a description of all of the land conveyed, the description ending with the general or omnibus paragraph quoted above. We think it questionable when reading the deed as a whole whether it was the intention of the parties to said deed to include any property situated outside of the county of Washoe, Nevada. There is at least a sufficient ambiguity in the language of the deed to justify the admission of extrinsic evidence to explain its

terms. In our opinion the trial court was not in error in admitting such evidence at the trial of this action.

The title to the five other parcels of land involved in this action is controlled by an entirely different state of facts. Plaintiff, as we have noted above, seeks to quiet its title to these lands, and also seeks to have it declared that they are held by the defendants in trust for the plaintiff. Both the pleadings and the evidence disclose the fact that the legal title to these lands stands in the name of the defendants. At most the plaintiff claims to be the equitable owner of said lands. It has been repeatedly held in this state that an action to quiet title will not lie in favor of the holder of an equitable title as against the holder of a legal title. (*Buchner* v. *Malloy*, 155 Cal. 253 [100 Pac. 687, 688].) Under this doctrine, plaintiff's action to quiet title to said lands must fail.

In support of its claim that said lands are held by defendants in trust for the plaintiff, it is alleged in the complaint that plaintiff purchased said lands and paid the consideration therefor and that the deeds transferring the title to said lands were taken in the name of the defendants' predecessors (four of said parcels being conveyed to Sarah A. Holcomb and one to W. T. Holcomb) and such transfers of title were made for the purpose of and with the understanding that said grantees should hold said lands in trust for plaintiff. This allegation is denied by defendants, except that they admitted that the deeds to said lands were made to defendants' said predecessors. Upon the issue thus made by these pleadings, the court found that Sarah A. Holcomb, as to four of said parcels of land, and W. T. Holcomb, as to one of said parcels, purchased for their "own and sole account, use, and purposes" the parcels of land so conveyed to them; that the plaintiff corporation furnished and gave to Sarah A. Holcomb and W. T. Holcomb, respectively, "certain moneys from the treasury of said plaintiff corporation as, and which was used as, their own money about, for and in said purchases, respectively, by drawing its checks payable to the grantors who conveyed said land" respectively to Sarah A. Holcomb and W. T. Holcomb, and "that it was not the intention of the plaintiff corporation, when it drew its check for the payment of said lands and premises, and each thereof, or of Sarah A. Holcomb or W. T. Holcomb when they, respectively, purchased the lands mentioned, that the title should be taken in

the name of Sarah A. Holcomb, or in the name of W. T. Holcomb, for the use and benefit of plaintiff corporation, but said purchases were, and each of same was, made by said Sarah A. Holcomb and said W. T. Holcomb with their own money and for their own use and benefit''. It will be seen from the reading of the findings that the trial court held against the plaintiff on its claim that said real parcels of land were conveyed to Sarah A. Holcomb and W. T. Holcomb ''for the purpose of and with the understanding that said grantees should hold said lands in trust for the plaintiff'' and further found that said purchases were made by Sarah A. Holcomb and W. T. Holcomb ''with their own money and for their own use and benefit''. The only question that may arise as to the sufficiency of the evidence to support these findings, is as to the manner in which these grantees acquired the money from plaintiff corporation to make these purchases. As we have seen, the plaintiff corporation as originally organized and conducted up to the time when a majority of the stock therein was transferred to Messrs. Thatcher, Wiegand and Turrittin, was a family affair. The members of the Holcomb family had conveyed to the corporation practically all their property. They carried on the affairs of the corporation without salary or wages. No dividends were paid directly, but by common consent of all stockholders in the corporation various sums of money were from time to time paid to or advanced for the use of the several members of the family. In fact, not only their entire living expenses were paid in this manner, but homes and other purchases of real property were made as the needs of the different members of the family required. In this way the several parcels of real property involved in the second, third, fourth and fifth causes of action were acquired. No objection was ever made by any member of the corporation nor by any creditor thereof, to any of such purchases. This statement includes the Washoe County Bank, representatives of which now own the majority of the corporate stock of the plaintiff. No showing has been made that at the time these several transfers were made the capital stock of plaintiff was in any way impaired by the advancements made on account thereof, nor that the rights of the creditors of plaintiff were at the time in any way impaired. Some of these transfers were made to defendants' predecessors more than twenty years, and all more than ten years, before

any question as to their validity was raised by any creditor, or any person whatever. In view of this state of the evidence we are not able to say that the findings of the court to the effect that the purchases of said parcels of land by Sarah A. Holcomb and W. T. Holcomb were made with their own money and for their own use and benefit do not find substantial support in the evidence. ■■■ ''Where the legal title rests in one person, to establish a resulting trust for the benefit of another against a presumption in favor of the legal title, the evidence must be clear and convincing, especially when an attempt is made to establish a resulting trust after the lapse of many years or where parol evidence alone is relied upon.'' (Ency. of Evidence, vol. 13, pp. 150, 151.) ''It is also true that evidence to establish a trust must be clear and convincing and satisfactory and perfectly free from doubt. When is the evidence of that character? The answer must be that if it has satisfied the conscience of the chancellor before whom the trial was had, and this court cannot say that the evidence clearly preponderates against the finding, the requirement must be held to be satisfied.'' (*McQuay* v. *McQuay*, 81 Mont. 311 [263 Pac. 683, 686].) Authorities similar to the above might be multiplied, but we deem the above sufficient for our present purpose. The trial judge, the chancellor before whom the trial was had, was not satisfied that the character of the evidence before him was such that it would justify him in the conscientious discharge of his duty in holding that a trust in the disputed lands had been established in favor of the plaintiff. Our consideration, after a careful study of the record and the law applicable to the facts of the case, coincides with that reached by the trial court.

■■■ The defense of laches is also relied upon, the same having been set up in one of defendants' affirmative defenses. We think this defense should also be sustained. As we have already stated, all of these transfers took place more than ten years, and some of them twenty years, prior to the present attack upon them. During this time, the Washoe County Bank, the predecessor of the present committee controlling the affairs of the plaintiff, undoubtedly had notice of these transactions. The checks drawn in payment of the several tracts of land involved were drawn upon that bank, and in other respects the evidence indicates that the bank was thoroughly familiar with the financial affairs of the corpora-

tion including those now in question. No action was taken, nor was any protest made against the transfers, or against any of them, until the institution of the present action. Those in control of the bank's affairs are bound by the previous acts, or nonaction, of the former officials of the bank. If laches ran against the latter, and in our opinion, it did, the effect is the same as to their successors. For this added reason, therefore, we are of the opinion that plaintiff should not succeed in this action.

In view of these conclusions, a discussion of other questions considered by counsel in their briefs becomes unnecessary.

The judgment is affirmed.

Langdon, J., Preston, J., and Shenk, J., concurred.